Appeal number 19-2110. We'll begin for the appellant, Mr. O'Connor.  My name is Benjamin O'Connor. I represent the defendant appellant in this case, Ms. Monique Bowling. Three issues are before the court today. First is jurisdictional. Whether or not the district court had jurisdiction based on the affirmative evidence developed under 18 U.S.C. 666. The second, evidentiary. Specifically, whether allowing a lay witness who testified that she received an email and then later testified that this email was fraud. Whether that was improper lay opinion testimony as well as improper propensity evidence. We argue that it was. And finally, an issue of sentencing. Specifically, whether an obstruction of justice enhancement was appropriate given the court's reading of the sentencing guidelines themselves, its reliance on U.S. v. Wilburn, this court's decision, as well as the facts of the case. Turning first to the issue of jurisdiction. Mr. O'Connor, your argument on jurisdiction, 18 United States Code section 3231, gives district courts the exclusive jurisdiction on all offenses against the laws of the United States. Your client was indicted here under 18 U.S.C. 666, clearly a law of the United States. It seems to me what you're arguing is a proof issue as opposed to a jurisdictional issue because 3231 gives us the exclusive jurisdiction based on what she was indicted under. The main point I want to bring up in that respect for that argument is that we're not contesting the sufficiency of the evidence as it relates to the elements of the crime. What we're saying is that what came up during trial was an issue that, sorry, was facts, was testimony that brought into question jurisdiction and the idea of whether an offense was at issue. The offense at issue is 18 U.S.C. 666. Why is that jurisdictional as opposed to sufficiency of proof? Because, again, 3231 gives us the exclusive jurisdiction. If she were charged under 666 and the jury found acquitted her because the government hadn't met its burden of proof on that particular element, we wouldn't say, oh, well, we don't have jurisdiction. We still have jurisdiction. It seems like it's a proof element. Because the issue that was raised was specifically that no federal funds were able to be accessed. That is not an element. And, again, this is where we get to case law as well. The government says Gary received money. The city of Gary received money. Monique Bowling, Ms. Bowling, was convicted of stealing from Gary. What's missing? And this is kind of what I'm going to answer your question. Please correct me if I don't. But I'm trying to get the point. The point, the reason the statute at issue was given to courts to, sorry, was established as an offense against the United States and therein giving courts jurisdiction under 3231 to protect sums of money distributed through federal programs. So the action must implicate in some way federal funds. It has to have some kind of aspect of it. You don't have to prove that actively. But if we have, and what we have in this case, testimony from the controller, essentially the comptroller of the city, saying no federal funds got to the IT department. Mr. O'Connor, let me ask you this question. Could you have, you didn't represent Ms. Bowling in trial court, right? But could her counsel have moved to dismiss the indictment on the day it was returned for lack of subject matter jurisdiction? On the day it was returned? No, because without this evidence. When it was filed, right? So the district court, she appears for her first appearance, is arraigned on it. Could her counsel have stood up and said, there's no federal jurisdiction here to proceed with the prosecution. We move to dismiss the indictment. No, because the indictment itself states the elements of the crime. Okay. If that's right, how do you define the word jurisdiction as you're using it? The reason I'm, I'll tell you why I'm asking that, okay? If you go, jurisdiction is a funny word, right? The Supreme Court has observed that in some of the very, Steel Company, among other cases that you've identified, okay? If jurisdiction is defined here to relate to the authority of the district court to proceed beyond indictment, okay? If that's what the term means, okay, I think you have to be making an argument about sufficiency of evidence. Even though I understand why you want to resist that characterization, because you have a stipulation that is not a good card in your hand, okay? But if what you're meaning is jurisdiction means something else, maybe you have an argument. So that's why I'm trying to figure out, what do you, how do you define it? What do you mean as you argue it here? As we're arguing it here, if there is no longer, as is a due stat trial, evidence, which would not have been known at the time of indictment, which comes up and states affirmatively, and that's what I'm bringing up, that no federal funds were affected. The jurisdiction, as a matter of fact, as a matter of proof, a due stat trial, correct? Correct. Because you can't argue a pretrial just on the face of the indictment for the reasons you articulated. Right. Okay. And I guess I'm trying to get at the point. So you'd be making a factual argument at that point, mindful of the trial evidence? Mindful of the trial evidence. I guess, and on top of that, if jurisdiction can be challenged at any time, why does it stop at indictment? If things are developed along the way that show that, in fact, the facts, certainly I'm not disputing that they're facts, that there is no evidence that a crime against the United States existed, which gives a federal court, meaning if there's no federal funds affected, there is no evidence then of a crime against the United States. The court, I'll use the same definition in the sense of how can the court proceed? How does the court have jurisdiction over that? That's simply the argument that we're trying to make, whether or not that falls under sufficiency of the evidence. What's a little bit odd about it, maybe you might not think it is, but what's a little bit odd about it is most defendants in that situation would react a little bit differently. Most defendants would say, this is a terrific development. The government has not proved the elements beyond a reasonable doubt. Acquit me. They would not say, dismiss the prosecution for lack of subject matter jurisdiction. May I respond to that? Please. Okay. The elements are, this is where it gets distinct, because the court has found that there aren't, this court and the Supreme Court has found there is no element of connection. The elements are, did the entity receive money at issue? Was the person a government agent? We'll stick into that. And then, what are the actions the person stole, embezzled, et cetera, from the government entity? We're saying there's something, what was not adduced throughout the entire time, and again, in our brief, we talk about why this case has distinct factual differences from the very cases which say there must not be a positive connection. Just because the court doesn't have to establish a connection doesn't mean that whether it's affirmative evidence of no connection, that nothing can be done. I guess in a way. But how does that strip us of subject matter jurisdiction, as opposed to they haven't met their burden of proof? If this connection has to be made, and your argument is the government didn't prove it, why does that strip the court of subject matter jurisdiction? If you had a bank robbery case, and it turned out that the bank wasn't insured by the FDIC, as Judge Scudder pointed out, the argument at trial would be they haven't proven their case. They haven't proven that the deposits were insured by the FDIC. It wouldn't be, okay, we have to take this out of the district court because you don't have subject matter jurisdiction. It's an element issue. And that's an element of the crime that it's insured by the FDIC and that it's a federal crime. Yes, yes. That's not happening here where there's no connection. So we're left, as a defendant, with a difficult circumstance where we couldn't challenge. There's this unique issue that comes up that says we can't affirmatively state. Sorry, we can affirmatively state that no federal funds were affected. But there's no way to challenge the elements. That's none of the elements. There's no way for us to respond outside of this argument. No, no, no, no, no. Hold on, hold on. If you forget the stipulation, erase it, okay? She could have argued. She would have had a hard time factually, I think. But she could have argued the city of Gary, the IT department, and all other departments receive no federal funding. I must be acquitted because 666 only applies to programs that receive federal funding. I must be acquitted. There's an element that United States Congress has put in Title 18. It's not been met. Right? So she knew she couldn't argue that. In fact, that's why she stipulated to it. So she had every opportunity to challenge that. It's just what that was. She had other fish fry in here that were harder. I understand. I'm limited in time. I'm happy to keep it. I don't know if there's further questions on that point. Two quick issues, which we can take in either form. Just a simple point about the testimony. What was the testimony? The testimony was that Ms. Krug received an email on April 30th from Salita Green. Again, we come back to Salita Green. And she receives the email, reviews it, testifies in open court, this is fraud. Let me quote. There was some kind of fraud going on, unquote. This has two problems, which I just want to address briefly and answer any questions. In the sense, again, it's making the jurors inference for them. It's not presenting the evidence, what she thought. Why isn't it? The question is, what did you think when you received the email? And she was the one who, at the time, got the email. And in response to that question, she said, I thought there was some kind of fraud going on. She did not answer what you said a moment ago and corrected yourself on, oh, this is fraud. She is testifying about her perception of the email at the time she received it. Why isn't that perfectly appropriate under 701? It's appropriate for her to do that, not to use the phrase fraud. But that's what she thought at the time when she got it. It would be different if they showed it to somebody during trial, that witness was not testifying about what she thought when she received it at the time, and she looked at it and said, oh, this is fraud. That would be a different situation. But she is testifying firsthand direct knowledge based on her perception at the time she got the email.  Because it's her thought, the question was very carefully asked, what did you think when you received the email? Not, as you sit here today, how do you characterize this? She says earlier as well, I thought there was something wrong. Well, that's not what you're challenging. You're challenging the fraud. Right, but I'm saying that's an appropriate way to do that. This is not someone who understands fraud. But why isn't the, I thought there was some kind of fraud going on at the same time. Because you're getting to a legal issue, you're stating something that, as opposed to, again, the case that's cited as lock, where bank employees who were reviewing a bank loan started using the race as misrepresentation, fraud, because the specific information at issue that was falsified was material in having them make the decision. So they said the reason why I made this decision was this fraudulent information. I guess I'm playing a little bit into maybe the second part of the argument, which is this had no probative value. This didn't establish anything. It didn't trigger any instances or knowledge of any kind in other people. This was charged as part of the fraud scheme. And they, she worked for the, Ms. Krug worked for the city of Indiana. And she's responding to an email that was sent in connection with the fraud. How could that not be probative? Her response when she got it, this was part of cover-up so that nobody had, the department would find out what was going on. Quickly, and I'll reserve the rest for my rebuttal time and stand on my briefing on the sentencing issue. And I was happy to talk about that. The issue is that this is, it's not necessarily a whole, the whole crime is not fraud. The crime is theft. It's been this, and they're using this as a way to shoehorn, what was presented at trial was that this woman stole from the city of Gary. But the statute says, obtained by fraud. And that was the way it was charged as well. That's how it was charged. The way it was instructed to the jury was whether it was obtained by fraud or stolen. Thank you, Your Honor. Thank you, Mr. O'Connor. We'll next hear from Mr. Whalen. May it please the Court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. I think the Court understands the issue on subject matter jurisdiction. Jurisdiction was secure under 18 U.S.C. 3231 because there was an alleged offense against the United States. Any evidence induced at trial in this case is not going to affect subject matter jurisdiction. And I just want to note, the defense has explicitly waived any sufficiency argument in its reply brief in footnote one, saying Ms. Bowling has not contested the sufficiency of the evidence. So there's no sufficiency claim in front of this Court at this point. For the reasons stated in the brief, it would fail anyway. So unless this Court has any other questions on subject matter jurisdiction, I'd move on to the second issue, which is Ms. Krug's testimony. And Judge St. Eve, I think you hit the nail right on the head, which is this is Ms. Krug's mental impression at the time she receives the email. So she gets this case, and she's an employee for CDW, which is the provider of the hardware. She's essentially the bulldog to go after and get the $1.2 million outstanding. She gets the case on April 28th. April 29th, she's emailing back and forth with Ms. Bowling and telling Ms. Bowling, I'm not going to deal with you anymore. I need to go above your head. And that's when Ms. Green steps in. And Ms. Green calls Ms. Krug at CDW and says, I have no clue about this $1.2 million. You should deal with me exclusively. I haven't talked with Ms. Bowling. Ms. Bowling then emails and says, yes, I've met with Ms. Green. You should deal with me exclusively. So Ms. Krug, as of the afternoon of the 29th, is getting conflicting stories from two different individuals at the City of Gary, one saying deal with Ms. Bowling and we've met, the other saying deal with Ms. Green. We haven't met. So on April 30th, she gets this email that we attached in our appendix from C. Green, essentially trying to explain away the discrepancy between what these two parties are saying. And Ms. Krug, at that point, she testifies. She didn't think it was on page 32. She said, I read the email. I'm sorry. Trial transcript, second volume, page 32. I read the email. I felt there was something wrong. I didn't believe it came from Salida Green. On page 33, I thought there was some kind of fraud going on. On page 35, my impression was there was something wrong. I did not believe it came from Salida Green. And then even on cross-examination, on page 39, she says, I questioned it, yes. She's not saying that it's fraud in the legal sense. She's saying it's fraud, meaning I thought there was something rotten in the state of Denmark, essentially. I thought this didn't come from Ms. Green because it's inconsistent with what Ms. Green said. And the relevance of that is it explains why Ms. Krug subsequently took the steps that she did, which is she sent that email again to Ms. Green because Ms. Green called and said, what are you talking about, essentially. She resent the FedEx invoices that Ms. Bolling had impersonated someone to sign and steal. And she didn't accept this C. Green email at face value. She continued to try to collect the money from the city of Gary. And so there's relevance. It's not 404B. As Judge Taney said, this is part of the cover-up. The jury was instructed on fraud. The government instructed the jury on fraud in the third volume of the trial transcript at page 103. The court instructed them in the third volume at page 129. They were instructed that this was a fraud case as well as a theft case. And so it's part of the charge conduct. Unless this court has any questions on that issue, I'd move finally to the sensing issue, which is this court's decided the issue conclusively against Ms. Bolling. It's held that malingering constitutes obstruction under the guidelines, 3C1.1. It's consistent with every other court of appeals to rule on that issue, all seven, I think. I'm unaware, and Ms. Bolling hasn't cited any other court that's ruled to the contrary. So she's, I think, asking you to overrule Willborn and create a circuit split, putting you one verse seven. I think this court should reject that inquiry or that request. So malingering does constitute obstruction under this court's case law, under the guidelines. In terms of the question of whether she was malingering, that's a question of clear error. The district court had the testimony for Dr. Correa, the BOP, who observed her for about 45 days. And these test scores that are just so beyond what a typical malingerer does, Dr. Correa says essentially this is beyond people with severe mental issues. She flunked it even worse than they do, and that's clear evidence of malingering. That's in her report. That's in her testimony in front of the district court. The district court chose to credit that as evidence of malingering. It chose to credit the fact that she was talking to her first defense counsel. She talked in court, and she only stopped talking at the time of the trial, essentially. That finding wasn't clearly erroneous, and because of that, the obstruction enhancement was appropriate. Unless this court has any questions on any of the issues, we would rest on our briefs and ask you to affirm the conviction and sentence. Thank you, Mr. Whalen. Thank you. Mr. O'Connor, let's give you two minutes on rebuttal. Okay. And I'll simply address the issue of sentencing. So I don't want to put the court at issue with other circuits, but I would think if there is the facts that put you at issue, I would think the court would not be afraid to do that. Are you asking us to overrule Wilborn? We're asking you to not find Wilborn completely on point, particularly with the facts at issue here. And what Wilborn decided, let me take a step back, the court said under the guidelines itself, there has to be a connection between the action, the obstructive action, and the offense at issue. The court, district court, hears that. I don't really see that. If there's a criminal defendant who has repeated outbursts during the trial and is warned that if it happens one more time he'll be absented and it could come back at sentencing, and he then has an outburst, stands up and yells at a cooperating witness who's testifying, do you have any doubt at all about whether a district court can impose an obstruction enhancement at sentencing if the jury returns a guilty verdict? I would say no, Your Honor. It could not? I would say the judge, I think the answer was any doubt. I have no doubt. Okay. All right. Now, clearly that's misconduct in the courtroom. How does it relate to the offense conduct? Yelling at a cooperating witness. No, the offense is long committed. That's the point you're making in your brief, and that's where I have the hard time with it. Because the obstruction enhancement envisions circumstances beyond the actual commission of the crime that a defendant can engage in that would be obstructive, impeding the prosecution through repeated outbursts in the courtroom. Then let me stay to that point. The facts, accepting that as the truth, that post, that doesn't have to be a connection as in that sense. All Ms. Boeing did was not speak to a lawyer. There's a huge difference in the behavior itself, and that's the clarification of, and maybe it's whether or not this constitutes malingering or this, but I think there's an issue prior to taking the court's question. All this does is further disincentivize people from requesting a competency hearing. This isn't some person acting out repeatedly in violation of the court and doing all these things. This is a person who actually never acted out against the court, never did anything except, frankly, act out of lack of self-interest, didn't talk to her lawyer. So I think that that, if I was going to bring up one single point, it was simply that that factual distinction is important, and that's what distinguishes it from Wilborn. If the court has no other questions. Thank you. The case will be taken under advisement. Mr. O'Connor, you and your firm have taken this case on. As a point of counsel, we thank you very much for the time, energy, and effort you put into it. Thank you as well, Mr. Whalen, for your argument. As I said, the case will be taken under advisement.